DECISION
{¶ 1} Relator, International Truck and Engine Corporation, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting temporary total disability ("TTD") compensation to respondent, Ralph E. Jackson ("claimant"), following his November 17, 2005 surgery and to order the commission to deny said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate noted that a termination of TTD compensation based upon the claimant having reached maximum medical improvement ("MMI") does not preclude the reinstatement of said compensation if there is a functional change in the claimant's medical condition that again causes temporary and total disability. R.C. 4125.56(A). Moreover, after an injured worker reaches MMI or has returned to work, a disabling surgery can constitute new and changed circumstances that warrant a period of reinstated TTD compensation until the claimant has recuperated from the surgery. State ex rel. ChryslerCorp v. Indus. Comm. (1991), 62 Ohio St.3d 193. The magistrate found that there was some evidence that the claimant's back surgery was related to the allowed conditions and that the surgery resulted in a functional change in the claimant's medical condition. Therefore, the magistrate concluded that the commission did not abuse its discretion in determining that the claimant was no longer at MMI and in awarding claimant TTD compensation. Accordingly, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision arguing two points: (1) that a previously disallowed surgery cannot later form the basis for an award of TTD compensation; and (2) that an earlier determination by the commission that the surgical procedure was unrelated to the allowed condition bars the commission from later basing an award of TTD compensation on that surgical procedure. We find neither argument persuasive given the facts of this case. *Page 3 
 {¶ 4} First, as noted by the magistrate, it is well-established that a termination of TTD compensation based on the claimant having reached MMI does not preclude the reinstatement of TTD compensation if there is a functional change in the claimant's medical condition that again causes temporary and total disability. R.C. 4123.56(A); State ex rel. Bing v.Indus. Comm. (1991), 61 Ohio St.3d 424. In addition, a disabling surgery related to an allowed condition can constitute new and changed circumstances that warrant a period of reinstated TTD compensation until the claimant has recuperated from the surgery. Chrysler Corp., supra.
 {¶ 5} Relator has cited no authority holding that a disapproved surgical procedure cannot constitute a new and changed circumstance in the claimant's medical condition justifying the reinstatement of TTD compensation. We also note that the decision to approve or disapprove a surgical procedure is a separate and distinct issue that is decided under criteria different from that used in deciding whether to reinstate TTD compensation. Therefore, just because the commission disapproved a surgical procedure does not mean that the surgery was unrelated to the allowed condition and did not result in a substantial change to the claimant's medical condition. That is exactly the factual scenario presented here. Although the commission previously disallowed the requested surgery, it did so based upon the fact that the claimant was not a good candidate for surgery due to several risk factors — not because the surgery was unrelated to the allowed condition. Relator has failed to identify any medical evidence that indicates the surgery was unrelated to the allowed condition. In fact, as noted by the magistrate, all medical evidence submitted indicated that the surgery was related to the allowed condition. The commission disapproved the surgery because of evidence indicating that *Page 4 
the risk factors associated with surgery for this claimant were too high. The fact that the surgery was successful and improved the claimant's allowed condition further supports the conclusion that the surgery was in fact related to the allowed condition.
 {¶ 6} Relator makes much of the fact that the commission's August 9, 2005 order contains a statement that the requested surgery was not necessary and reasonably related to the allowed conditions. The commission identified no evidence in the August 9, 2005 order which would support that statement. Nor has relator identified any evidence that would support that statement. In fact, the two medical reports referenced in the August 9, 2005 order indicate only that the claimant was not a good candidate for surgery, not that the surgery was unrelated to the allowed condition. Counsel for the commission has asserted that the statement in the August 9, 2005 order upon which relator relies is a clear mistake of law or fact. We agree. There is simply no evidence in the record to support such a statement. Moreover, in its order awarding TTD compensation, the commission specifically found that "the surgery was treatment for the allowed conditions in the claim." Therefore, we overrule relator's objections.
 {¶ 7} Following an independent review of this matter, we find that the magistrate has properly determined the facts and the applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and FRENCH, J., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 8} Relator, International Truck and Engine Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Ralph E. Jackson ("claimant") following his *Page 6 
November 17, 2005 surgery and ordering the commission to find that claimant is not entitled to that surgery because the commission had previously denied claimant's request to authorize the surgery prior to the date it was performed.
Findings of Fact: {¶ 9} 1. Claimant sustained a work-related injury on December 9, 2002, and his claim has been allowed for "lumbosacral strain; aggravation of pre-existing degenerative disc disease L4-5, L5-S1; aggravation of pre-existing spinal stenosis L3-S1."
 {¶ 10} 2. Claimant began working for relator in 1969 when he was in his early 20s. Claimant was employed as an assembler which required him to stand and walk constantly with occasional to frequent bending, twisting and stooping. Claimant was required to lift and carry objects weighing up to ten pounds. Claimant has been off work since early 2003.
 {¶ 11} 3. Claimant's initial treatment was conservative in nature and included medication and physical therapy.
 {¶ 12} 4. In August 2004, claimant filed a motion requesting authorization for surgery consisting of a lumbar laminectomy and fusion with lumbar fixation and bone graft as requested by Larry T. Todd, D.O. Along with the request, claimant submitted the July 26, 2004 letter from Dr. Todd to claimant's treating physician Scott Costin, D.O. In that letter, Dr. Todd indicated that claimant was continuing to have bad back pain in spite of treatment, including a course of epidural injections. Dr. Todd indicated that he recently sent claimant for a new MRI in July 2004 which revealed moderate to severe spinal stenosis at L3-4 with short pedicles at L4-5 and L5-S1. Dr. Todd indicated that claimant's current options included the following: "1) Observation; 2) Physical therapy; 3) Epidural *Page 7 
steroids; 4) Pain clinic management/pain behavioral management; 5) Surgery." However, Dr. Todd noted that claimant has such severe stenosis at three levels that, in his opinion, "the surgical option would be a laminectomy decompression posterior spinal fusion and instrumentation with interbody allograft and iliac crest bone graft from L3 to S1." Dr. Todd indicated, however, that there were certain risks involved, including:
 * * * [D]eath, infection, paralysis, pseudoarthrosis, failure of hardware, failure to relieve symptoms, worsening of symp toms, need for blood transfusion as well as CSF leak, vascular injury, blood clots, decreased range of motion, and mal-placed hardware were all described to the patient. The risks and benefits as well as alternatives to treatment and expected outcomes were explained to the patient. The patient was able to ask questions, understood and requested to proceed with surgery. * * * I instructed to Ralph that he has to be realistic with his expectations and that there is no silver bullet for back pain. Most likely he will live the rest of his life with some component of back pain and he understood that and again requested to proceed with surgery.
 {¶ 13} 5. Relator sent claimant to David C. Randolph, M.D., who issued a report dated July 12, 2004. Dr. Randolph had previously examined claimant in May 2003. After providing his physical findings upon examination and identifying the medical evidence which he reviewed, Dr. Randolph stated that claimant does have an impairment due to the allowed conditions, that impairment is permanent and claimant has reached maximum medical improvement ("MMI"). With regard to his recommendations for further medical management of claimant's condition, Dr. Randolph stated:
 It is my opinion that he should continue to participate in physical therapy. It is to be noted these records would indicate he has had improvement in his function and levels of subjective complaints with physical therapy. He has had extensive diagnostic studies and has been found to NOT * * * be a surgical candidate. *Page 8 
 It is to be noted that this claimant continues to abuse tobacco on a regular basis. He is a poor candidate for surgery. Individuals who continue to abuse tobacco products and have emotional problems are practically guaranteed failure from the standpoint of surgical endeavors.
 Therefore, in my opinion, the only medical management warranted under the circumstances is continued physical therapy, a home exercise program, weight loss, cessation of tobacco products and a regular program of walking. No other treatment is warranted, necessary, appropriate or beneficial. It is my opinion he is not a surgical candidate.
(Emphasis sic.)
 {¶ 14} 6. After being given Dr. Todd's July 26, 2004 report, Dr. Randolph prepared an addendum. Dr. Randolph indicated that claimant's 2004 MRI showed that his spinal stenosis had progressed only slightly compared to December 2002, and that "[n]one of my previously expressed opinions however are altered in any way with respect to this claimant's surgical candidacy. Again I would note that this claimant's ongoing tobacco abuse will practically quarantee a failure of his proposed fusion."
 {¶ 15} 7. Claimant's motion was heard before a district hearing officer ("DHO") on October 1, 2004, and was granted. The DHO relied upon Dr. Todd's July 26, 2004 report.
 {¶ 16} 8. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on November 9, 2004. The SHO determined that claimant's request for the authorization of surgery should be denied and further determined that claimant's current receipt of TTD compensation should be terminated as follows:
 * * * The request for authorization for a lumbar fusion on the 07/26/2004 C-9 by Dr. Todd is denied based upon the persuasive reports of Dr. Randolph dated 07/12/2004 and 08/30/2004. Dr. Randolph feels very strongly that the injured worker is not a suitable candidate for surgery. *Page 9 
 * * * Based on the same reports of Dr. Randolph, the Staff Hearing Officer finds that the injured worker has reached maximum medical improvement for the allowed conditions of the claim. Therefore, temporary total disability compensation is terminated as of today's hearing.
 {¶ 17} 9. After further surgical consultations, claimant filed a second motion requesting the authorization to proceed with the requested surgery in March 2005. Claimant submitted a new report from Dr. Todd dated May 6, 2005. In that report, Dr. Todd indicated that claimant's low back pain had continued to worsen. Further, Dr. Todd indicated that claimant's physical therapy, epidurals and medication have all failed to provide him with any relief. Dr. Todd opined that the fusion procedure would help claimant with his pain. Claimant also submitted the February 3, 2005 report of John S. Wolfe, M.D., who, after providing his findings upon physical examination and discussing the most recent MRI results, opined:
 This patient apparently has very significant lumbar stenosis, especially at the L3-4 level, apparently made to be symptomatic by the nature of the work that he did. Mr. Jackson is totally unable to resume his former type of work. He has been a total failure for conservative treatment. Mr. Jackson is reasonably a good candidate to have decompression of his lumbar spine in an attempt to improve his walking tolerance and decrease his pain. Even with successful decompressive surgery, I do not think this gentleman will be able to return to anything more than light work in the future.
 {¶ 18} 10. Claimant was also examined by Paul T. Hogya, M.D., who issued two reports. In his first report, dated March 3, 2005, Dr. Hogya first reviewed claimant's medical history, identified the various records he reviewed, and set forth his physical findings upon examination. Thereafter, he opined that the current medication regimen prescribed to claimant, including Oxycontin, Percocet, Skelaxin and Lidoderm patches were not medically necessary for the treatment of his allowed conditions. With regard to *Page 10 
further medical management, Dr. Hogya recommended regular home therapy, stretching and back stabilization exercises. Dr. Hogya recommended that claimant avoid the use of a back brace at most times and that he should alternate the use of ice and heat. In his April 21, 2005 report, Dr. Hogya opined that, in his medical opinion, the available medical evidence does not support the requested surgery as being medically necessary for the treatment of claimant's allowed conditions. Dr. Hogya gave the following reasons for his opinion: (1) "There have been no EMG/NCV tests since January 2003, when those tests revealed no radiculopathy or myelopathy. Positive EMG testing should be documented prior to considering this major multi-level decompression and fusion as being medically necessary"; (2) "Neurological examination fails to reveal any objective radiculopathy or myelopathy, only generalized subjective sensory disturbance in the right leg compared to the left"; (3) "No flexion-extension X-rays were submitted documenting spinal instability and there is no degenerative spondylolisthesis that indicate need for fusion in this case above and beyond more conservative decompression options"; (4) "Dr. Randolph addressed this issue in August 2004 when he noted surgery was not necessary or appropriate in light of a multitude of factors including age and tobacco abuse"; (5) "There are ongoing issues of narcotic dependence that have not been adequately addressed and will certainly play a factor in any planned post-operative recovery and rehabilitation"; and (6) "The proposed multi-level fusion has a high incidence of failed fusion and outcome above and beyond the age and tobacco abuse issues present in this case." Dr. Hogya concluded:
 In general, surgical decompression can obviously be a potential beneficial treatment option in refractory degenerative spinal stenosis. However, the proposed surgery in this case represents a major operation in this 61-year old *Page 11 
gentleman with substantial risks and negative outcomes from which there is no going back. These factors should be adequately evaluated and considered in assessing the medical necessity of this specific proposed invasive treatment.
 {¶ 19} 11. Claimant's motion was heard before a DHO on May 31, 2005, and was denied. The DHO relied upon the March 3 and April 21, 2005 reports of Dr. Hogya and the fact that the same surgery had previously been disapproved. The DHO found that Dr. Randolph's reports were still probative evidence and they were also relied upon.
 {¶ 20} 12. Claimant appealed and the matter was heard before an SHO on August 9, 2005, and the prior DHO's order was affirmed. Claimant's appeal was refused by order of the commission mailed September 1, 2005.
 {¶ 21} 13. Thereafter, on November 17, 2005, Dr. Todd performed the surgery on claimant.
 {¶ 22} 14. Dr. Todd saw claimant for his four-week post-operative visit. In his December 12, 2005 report, Dr. Todd noted:
 At this time Ralph is in here smiling and states he hasn't felt this good in years. He presents with his son and daughter.
 Today on physical examination his incision is well healed. Dorsi flexion, plantar flexion and quadriceps are at 5/5.
 Today AP and lateral lumbar spine x-rays were obtained, which shows the hardware holding in good alignment.
 IMPRESSION: Congenital spinal stenosis, L3 to S1, ICD code 724.02, four weeks postop from laminectomy and fusion.
 PLAN: At this time, Scott, again I have known Ralph for over two years now and I haven't seen him look this good. He is in here smiling. He always has a good attitude. He does have some bone graft donor site pain; otherwise, he is doing well. I have given him a prescription for Percocet 5mg, #80 without refills to be taken only sparingly. I instructed him no *Page 12 
formalized physical therapy until the three month mark. I would like to seem him back in eight week's time, which will put him three months out from surgery; otherwise, I couldn't be happier with his progress. His family is in here thanking me; again, he has been in such bad pain for so long that he does feel good. I know that he was even getting to the point that he was getting depressed and you prescribed him some anti-depressants and I appreciate you taking good care of Ralph.
 Again, he has lost a lot of weight and he looks great. He lost a lot of weight before surgery and he tried about everything short of the surgery but I think he is recovering very nicely. I have instructed to Ralph that I still don't want him bending, twisting, or lifting more than 15-20 pounds. I instructed him to slowly wean out of his brace over the next couple of weeks. I instructed him that when he is completely out of the brace and off the pain medications and feels comfortable behind the wheel he can start driving. Otherwise, I instructed him no therapy until the three month mark, for which I would like to see him back in eight week's time, which will put him three months out from surgery with repeat AP and lateral lumbar spine x-rays.
 {¶ 23} 15. Dr. Todd saw claimant again in February 2006 and, in his report dated February 6, 2006, Dr. Todd indicated that claimant's recovery post-surgery continued to be remarkable.
 {¶ 24} 16. Thereafter, on April 11, 2006, claimant's treating physician, Dr. Costin, completed a C-84 certifying a period of TTD compensation beginning the date of surgery, November 11, 2005 through an estimated return-to-work date of August 11, 2006. Claimant included the operative report as well as the two reports of Dr. Todd above detailed.
 {¶ 25} 17. The matter was heard before a DHO on June 9, 2006, and claimant's request for TTD compensation was granted. The DHO relied primarily upon the C-84 prepared by Dr. Costin. The DHO noted that the employer (relator) argued that claimant *Page 13 
could not be awarded TTD compensation because the commission had denied claimant's request to authorize the surgery. The DHO rejected that argument and noted that the surgery had been denied in large part because Dr. Randolph had determined that claimant was not a suitable candidate for surgery. Thereafter, the DHO also noted:
 The Supreme Court of Ohio created a three-prong test for authorization of medical services in State ex rel Miller v. Indus. Comm. (1994), 71 Ohio St. 3D 229, at 232. That test requires a showing that the treatment is (1) "reasonably related to the industrial injury, that is the allowed conditions," (2) "reasonably necessary for treatment of the industrial injury," and (3) the cost of such service is "medically reasonable." As indicated by the above-mentioned orders, the surgery which was eventually performed on 11/17/2005, was denied by hearing officers because it did not meet the second prong of the Miller three-part test. Relying upon the reports from Dr. Randolph, the 11/09/2004 Staff Hearing Officer order ruled that the Claimant was "not a suitable candidate for surgery." Dr. Randolph's 08/30/2004 report, which was in part the basis for the 11/09/2004 Staff Hearing Officer order, stated that "surgery is not a well considered option for the Claimant" because "the Claimant has a multitude of factors and issues which would serve as contraindications to the performance of such a major surgical procedure." Nowhere in his 08/30/2004 report does Dr. Randolph clearly state that the requested surgery was not reasonably related to the allowed conditions (i.e. the first prong of the Miller's test).
 The District Hearing Officer finds that payment of temporary total disability compensation does not require that the Miller three-prong test be satisfied. Furthermore, restarting temporary total disability compensation following a finding of maximum medical improvement does not require that the Miller three-prong test be satisfied. The District Hearing Officer finds that, despite the denial of the surgical procedure which was performed on 11/17/2005, that surgical procedure was related to allowed conditions in this claim. No persuasive medical evidence indicates otherwise. In addition to the above-mentioned C-84 report relied upon by the District Hearing Officer in awarding temporary total disability compensation, the District Hearing Officer also relies upon Dr. Todd's (surgeon) 12/12/2005 narrative report and his *Page 14 
02/06/2006 narrative report. These reports clearly reveal how successful this surgery was for the Claimant. Dr. Todd states: "At this time Ralph is in here smiling and states that he hasn't felt this good in years." The Claimant was only four-weeks post-surgery and Dr. Todd reported how successful this surgery was. The success of this procedure also demonstrates a lasting therapeutic benefit, thereby rendering the Claimant's allowed conditions again "temporary in nature" and thereby entitling the Claimant payment to the above-mentioned period of temporary total disability compensation.
(Emphasis sic.)
 {¶ 26} 18. Relator appealed and the matter was heard before an SHO on July 25, 2006. The SHO affirmed the prior DHO's order and awarded TTD com-pensation from November 17, 2005 and continuing based upon the presentation of medical evidence. The SHO provided the following rationale for the order:
 During 2004 and 2005, the Claimant made application for authorization of fusion surgery involving the lower back out of this claim. This authorization was repeatedly denied. The medical evidence relied upon in the orders which denied this authorization was evidence which primarily concluded that the surgery was not indicated because of risk factors which involved medical conditions, and activities, which are not a part of this claim. Particular attention is drawn to the 03/03/2005 and 04/21/2005 reports of Dr. Hogya. The denial of the requested authorization of surgery is therefore not due to a lack of relationship between the medical treatment and the allowed conditions, but rather due to a conclusion that the treatment was not necessary and appropriate.
 Not withstanding the denial of authorization under the claim, the Claimant underwent this surgery on 11/17/2005. He now seeks payment of temporary total disability compensation beginning on the date of this surgery. In support of the requested award, the Claimant points to medical evidence which shows that this surgery resulted in improvement in his disability arising out of the allowed conditions in this claim. Dr. Todd provided a report of 12/12/2005 and of 02/06/2006. Particular attention is drawn to Dr. Todd's statement, "At this time Ralph is in here smiling and states that he hasn't felt *Page 15 
this good in years." This statement dates from four weeks post surgery. Based upon this medical evidence, the Staff Hearing Officer finds that the procedure did provide a significant lasting therapeutic benefit. Thus the question presented is whether the denial of authorization of a medical treatment, with the Claimant nevertheless going forward with this treatment, breaks the chain of causal connection between the industrial injury and the temporary nature of the disability following that treatment. Neither party presented case law directly on point. After consideration, the Staff Hearing Officer finds the District Hearing Officer's order in this matter well taken. The Claimant's disability following the surgery was of a temporary character, in that he was improving. The surgery was treatment for the allowed conditions in the claim. The denial was not on the basis of a lack of connection between the allowed conditions and the proposed treatment, but merely based upon other contraindications. There is no other basis on which it could be properly held that there isn't a causal connection between the injury and the disability. There is no evidence that the Claimant was able to return to his former position of employment over this. On this basis, the Staff Hearing Officer does find that the Claimant has demonstrated that he was temporarily and totally disabled, and entitled to the payment of compensation, beginning on 11/17/2005.
 {¶ 27} 19. Relator's further appeal was refused by order of the commission mailed August 16, 2006.
 {¶ 28} 20. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. *Page 16 
 Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 30} In the present case, relator argues that the commission abused its discretion by granting claimant TTD compensation following the November 11, 2005 surgery because, not only was that surgery unauthorized, but the commission had previously denied claimant's motions requesting the authorization of that surgery. Relator contends that the prior commission orders denying claimant's motions to authorize the surgery are final determinations and constitute res judicata on the issue of the appropriateness of the surgery. As such, although the reports of Drs. Costin and Todd do constitute "some evidence" that claimant was disabled following the surgery, relator contends that the commission's refusal to authorize the surgery is tantamount to a finding that the surgery is unrelated to claimant's claim and that any subsequent disability is likewise unrelated. For the reasons that follow, this magistrate disagrees.
 {¶ 31} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant *Page 17 
is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 32} Under Ohio law, it is well established that a termination of TTD compensation does not preclude a reinstatement of compensation if circumstances change and claimant experiences a flare-up of a permanent condition, or a relapse after return to work, that again cause temporary and total disability. See R.C. 4123.56(A).
 {¶ 33} In State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424, the claimant's condition had been found permanent. The court relied on the commission's continuing jurisdiction under R.C. 4123.52 to reinstate TTD compensation when there are new and changed circumstances, such as a flare-up or exacerbation of the condition which had previously reached MMI. Similarly, the court stated in State ex rel. NavistarInternatl. Transp. Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267, that, where TTD compensation had ceased on the basis of the ability to return to work, a subsequent relapse can warrant a reinstatement of TTD compensation pursuant to R.C. 4123.52. Further, after the injured worker reaches MMI or has returned to work, a disabling surgery can constitute new and changed circumstances that warrant a period of reinstated TTD compensation until the claimant has recuperated from the surgery.State ex rel. Chrysler Corp. v. Indus. Comm. (1991), 62 Ohio St.3d 193.
 {¶ 34} In Bing, Navistar and Chrysler, the repeated requirement was that the claimant must demonstrate a functional change in his/her medical condition. Further, in order for TTD compensation to be reinstated, the court made clear that the disability must not only be total (preventing performance of the former position of employment), but must also be temporary (not yet having reached MMI). Under Ohio Adm. Code 4121-3- *Page 18 
32(A)(1), MMI is a status where no improvement or "fundamental functional or physiological change" can be expected from further treatment.
 {¶ 35} As stated previously, relator argues that by refusing claimant's request to authorize the surgery, the commission determined that the surgery was not related to the allowed conditions. Therefore, relator contends that any disability arising from the surgery is likewise not related to the allowed conditions. However, the magistrate finds that the commission's stated rationale for denying claimant's request to authorize the surgery was not based upon whether or not such treatment was appropriate for claimant's allowed conditions. Instead, by relying upon the reports of Drs. Randolph and Hogya, it is clear that the commission weighed the potential benefits and risks associated with the requested surgery and agreed with Drs. Randolph and Hogya that the potential risks outweighed the potential benefits. In those doctors' opinions, claimant did not present as a good candidate for surgery given his age, weight, and the fact that he was a smoker. Drs. Randolph and Hogya did not believe that the surgery would be successful because of those above factors. The commission relied upon those opinions and that is why the commission did not authorize the requested surgery.
 {¶ 36} In spite of the fact that claimant's health issues made him a poor candidate for surgery, the surgery went well and claimant's post-surgery recovery was remarkable. Dr. Todd specifically indicated that claimant feels better than he has in years and that his pain has been significantly reduced. Those statements, in and of themselves, constitute "some evidence" that the surgery was related to the allowed conditions as the surgery has greatly improved the symptoms claimant was experiencing. Again, the simple fact that the commission had made the decision that the potential risks involved outweighed *Page 19 
the potential benefits when the commission refused to authorize the surgery does not establish that the commission determined the surgery was not directly related to the allowed conditions. Res judicata only applies when the same issue has already been determined. In the present case, these are two separate and distinct issues.
 {¶ 37} Ordinarily, once a finding of MMI has been made and a claimant's TTD compensation has therefore been terminated, claimants have sought a reinstatement of TTD compensation following an aggravation or exacerbation of their allowed conditions. In those instances, the claimant's condition, which had been stabilized previously, has worsened. This worsening of the claimant's condition renders the claimant again temporarily totally disabled in spite of the previous finding that the claimant had reached MMI (defined as "a treatment plateau * * * at which no fundamental functional * * * change can be expected within reasonable medical probability in spite of continuing medical * * * procedures." Ohio Adm. Code 4121-3-32[A][1]).
 {¶ 38} In the present case, claimant's treating physician completed a C-84 which lists "lumbar spinal stenosis," an allowed condition, as the condition preventing claimant from returning to work. While the evidence shows that claimant's condition has actually improved (and not worsened) and is expected to improve further, claimant is no longer at MMI and his treating physician stated that the current period of disability was caused by an allowed condition. As such, the magistrate finds that the commission did not abuse its discretion in this particular case in granting claimant an additional period of TTD compensation. There is "some evidence" in the record upon which the commission relied indicating that the current period of disability related to the allowed conditions. *Page 20 
 {¶ 39} Based on the foregoing, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus. *Page 1